21-4014 Digital Media Solutions, LLC, et al. v. South University of Ohio, LLC, et al. Arguments not to exceed 15 minutes per side. Mr. Wessler, you may proceed for the appellants. Thank you. May it please the Court, Matthew Wessler for the intervener appellants. With the Court's permission, I'd like to reserve three minutes for rebuttal, and I appreciate the Court's accommodation to allow me to appear remotely. A bar order is an extraordinary remedy. It strips parties of their day, third parties of their day in court, and it does so without their consent and through no fault of their own. As a result, courts have imposed a demanding set of safeguards that must be met before an appointed receiver and a receivership court may take the extreme step of forcing the termination of live pending claims in another jurisdiction. I find it very odd that we don't see receivers very often, and here we are in two cases in one day with receivers. But go ahead. That was a sad comment. It's true, Your Honor. Among the safeguards that a court's required to assess before entering a bar order includes the requirement that the district court have jurisdiction over the property being sought by the bar claims and that the receiver have standing... Can I ask you, can you hear me okay? I can, yes, Your Honor. Can I ask you, I was confused a little bit by both the labels, I guess is what I'll call them, the subject matter jurisdiction label and the standing label. It seems like subject matter jurisdiction that the Supreme Court in recent years has made quite clear that jurisdictional questions are quite narrow. It has repeatedly told the lower courts not to treat something that is not jurisdictional as jurisdictional. And here it seems to me diversity jurisdiction exists. I think both parties agree with that. So is it right to call it subject matter jurisdiction? I understand your claim is essentially it goes outside the equitable authority of the receiver to bar non-creditor claims against non-debtors. I'm not certain it's jurisdictional. I would just view that as a merits question about the scope of Rule 66 and historical equitable practice. And I'm curious if you would agree, disagree, or just correct me if I'm wrong. I agree with you that it is confusing. I think this court's decision in Liberty II, which is the unpublished opinion that was spawned from securities receivership, does, I think, analyze this question as a matter of Article III standing. And then in this court's follow-on decision called Luliger, which we cited both of these cases in our briefs, I think the Sixth Circuit there also looked at this question, at least in part, as a matter of Article III standing, in the sense that a receiver and a receivership court has no jurisdiction to bar claims of third parties to the extent that those claims are not also held by the receiver himself. But I agree with your maybe big-picture reaction, Judge Murphy, which is that it may not make too much sense to get bogged down in labels, because at the end of the day, what matters is whether the receiver has standing, whether that's Article III standing or a more prudential version of standing, to step in and attempt to bar claims that it itself as the stand-in for the receivership entity does not hold. Just to follow up, just setting aside the labels, what's wrong with... The district court's decision struck me as somewhat pragmatic in the sense of, just like in any bankruptcy case, this is just like bankruptcy, right? We have a finite amount of funds. We have lots of creditors. We need to discourage one creditor from jumping ahead of others. We need to have an organized liquidation. And if we don't bar this claim, there's going to just be a race to the courthouse, and you're going to jump ahead of the health care claims, the United States claims, the secured creditors' claims. You might have this argument about the scope of... It's a formalistic argument, a legal argument. But pragmatically, why shouldn't we be concerned about, if we agree with you, this would end in a race to the courthouse and just not the organized nature that we see in bankruptcy? Sure. So two responses to that, Your Honor. The first is at a more general level, although you're right that receivers have a stated objective that is similar to, say, for instance, a trustee in bankruptcy, which is to preserve as much of the estate for the benefit of the creditors as possible. I think this court has made clear, again, in Liberty and in Williger, that that does not, and I'm quoting here from Liberty, that does not equate to a grant of authority to pursue claims belonging to creditors. So there is a distinction, I think, and it's not formalistic. I think it's actually the key distinction that prevents a receiver from running roughshod over the rights of non-consenting third parties, that a receiver can only pursue claims that are held by the receivership entities. And in fact, that's true in the bankruptcy context as well. In Dow Corning, which is this court's seminal bankruptcy decision involving a similar kind of situation, the court there identified seven specific factors that it said had to be met before a bankruptcy court could enter a non-debtor release for claims that were being pursued by individuals other than the debtor. And in both cases, that dividing line, whether the receiver himself holds the claim as a standard for the receivership entity, is, I think, the single most important factor that prevents a receivership, just like it would prevent a bankruptcy court, from trenching on the due process rights of non-consenting third parties. And so in a case like this, it's more than just a general desire to aggregate assets for the benefit of creditors. What's necessary, what's required, and what didn't happen here was the receiver to show and meet its burden to establish that it has satisfied all of the relevant factors before a court can enter the bar order. And here, none of those factors were satisfied. I don't think it's even actually very close for any of them. The second response I have to your question, Judge Murphy, is maybe a more record-specific one, which is the idea that there'd be a race to the courthouse and somehow a diminution or dissipation of assets was never proven in this case. The only thing that happened here was the receiver came in and said that it was a possibility that allowing the student's claims in a different jurisdiction to continue on against entities other than the receivership entity in this case might possibly lead to the dissipation of assets based on a theory of indemnification. But if you actually look at the insurance policy that was the subject of this receivership, it contains an exclusion for precisely the kind of claims, fraud claims, that the students were pursuing in the parallel. I was curious, why aren't you arguing that this kind of falls outside the property of the receivership since your claim is for fraud and the insurance policy doesn't cover fraud? Well, we have argued that. We've argued that the receivership court lacked jurisdiction because, as other courts have said in this context, what you need to show is that the claim would directly affect the estate. And that was never argued or shown here. But instead, because these claims are fraud claims and are not covered by the insurance policy, they don't have any potential effect on the estate. That's one of the four factors that we say the receiver failed to prove and the district court failed to require the receiver to show. So I think that is exactly what you just said, which is that the claims fall outside the scope of the receivership, both because they won't affect the receivership assets at all and because the receiver himself doesn't hold the claims that the students have brought. The claims that the students are pursuing in their case are fraud claims based on misrepresentations made directly to them, not on any claim based on a misrepresentation made to the receivership entity. And as this court, I think, has said multiple times, again, including in Liberty and Rueger, that distinction means that the receiver doesn't hold the authority or the power to seek to terminate or extinguish claims held by other third parties that the receiver himself cannot pursue. And the only analysis the district court provided in reaching a contrary conclusion was to misstate the nature of the claims in this case. What Judge Polster said in his opinion was that he found the claims to be overlapping or substantially identical because he said the students were making allegations about the receivership entity and the directors and officers having made misrepresentations that adversely affected schools. But the actual claims in the student's case were not that the misrepresentations affected the schools. They were that the misrepresentations directly affected them. And so that's the distinction. Can I just switch gears? I have one final question for you. And it's about the litigation trust. And I think the district court had in mind, like in these asbestos cases and in Dow Corning itself, the idea that we're going to have a whole bunch of funds, we're going to put them aside, and then we're just going to transfer the liabilities to there. So yes, you can't sue the directors and officers anymore, but you can bring your claims against the litigation trust. And that does have some analogy in bankruptcy, as I said. Dow Corning was in the federal bankruptcy statute as well. What's wrong with that? I know you say that maybe you won't be able to pursue the claims. I'll ask the other side about that. But if you could pursue the claims, would that be an acceptable alternative? It wouldn't, Your Honor, for the reasons I identified earlier, which is that the receiver doesn't have the authority to actually require third parties to come into a claims process like this. But there is no claims process here. And that's because I've actually never seen a litigation, and I've looked at all of the receivership cases, both in the securities context and in the bankruptcy context. And I've not encountered a similar kind of process, one that is not actually a claims process, but is instead a requirement that a party, to the extent they want to recover something, prove that they have a claim, a valid claim that is essentially a judgment. But the problem with what the district court did and what the receiver proposed is that as a precondition, in order to file a proof of claim, it requires a court of competent jurisdiction to enter judgment on a final and non-appealable basis on the student's claims. But the function of the bar order is to deny the students any opportunity to pursue their claims in any court. And so as a result, what it's done is it's actually created an illusory process, one that is designed actually to potentially look like a viable process, but in fact a sham not designed to permit the students to recover anything at all. I see that my time has expired. I'll save the remainder of my time for rebuttal, unless the court has further questions. Okay. Mr. Glickman. Thank you, Judge. May it please the court, my name is Rob Glickman. I represent the receivership estate of Dream Center Education Holdings. We refer to it as DCEH for ease, because saying it over and over again is difficult. This was an extraordinary case and a bar order is an extraordinary remedy. This involved a university system with 70 campuses in 38 states put into emergency receivership because of horrible financial mismanagement. The receiver took control of the estate and found himself with various classes of constituents, creditors. That included the United States government in the form of the Department of Education and Department of Labor. It included secured lenders holding at least $150 million of secured debt. Teachers and employees making claims for both unpaid wages and for health care claims because DCEH had abandoned its prior health care provider, Aetna, started its own self-funded, self-insured claim, but underfunded it. So the receiver found himself getting phone calls from people who had went and got health care and now being put in collection. Can we just start with kind of first principles? I found this case interesting just because it's like, where's the source of authority? And then when I looked for the source of authority, it was Federal Rule of Civil Procedure 66. And it essentially says we should be applying the historical practices of equity. The cases you cite are either bankruptcy cases or security cases where there's a statutory source of authority for the type of extraordinary order that is at issue here, which is barring a creditor against a non-debtor. And I haven't found anything in historical usage which would justify this. If you read our Dow Corning decision, the bankruptcy court in that case said, I can't do this. Historical equitable practices don't allow for me to do this. And we reversed on the basis of a statute, the bankruptcy statute, which doesn't apply here. So what historical source of authority allows a court to engage in this type of claim? Federal equity receiverships predate the bankruptcy statute. And the authority for federal equity receivers and courts to approve those receivers to do equity predates the bankruptcy statute. In this instance... But those are the sources we have to look to in order to determine the scope of the receiver's authority. And my point is there are limits on historical equitable practice that maybe the bankruptcy code has expanded beyond, which is why Dow Corning distinguished traditional equity practices and relied on the bankruptcy statute. Yes, Judge, but bar orders are, while extraordinary, are not unique to this case or to any of the circuits. Bar orders are, I won't say routinely put on by federal district courts, but this is the second one just in my career that I've had to defend in this court. They're routinely defended in state courts. Is it usually as a matter of bankruptcy practice? No, Judge, I apologize. I didn't mean to interrupt you. Most of the cases are bankruptcy or securities, as far as I can tell. For example, a case cited in all of the briefing in this case, Gordon V. Dedante decided in 2009 by this court, upheld a bar order where a receiver wanted to bar all claims against a specific entity, a private company called Initrac, so that the receiver could effectuate a settlement with Initrac. Seventy-seven of just over 100 investors in the receivership entity, which was a Ponzi scheme, objected. And this court found the bar order to be reasonable, left it in place, and in fact, in doing so, did equity. Those 77 investors, along with the others, received over 100% of the money that they lost, because the receiver was able to institute a bar order and stop what was a run on a closely held stock. This case was no less emergent. The receiver came in and found himself in a position where the Department of Education cut off Title IV funding. The universities had to close. He had to effectuate teach-outs, or at least transfer students to other universities so they could attempt to get their degrees. Sell an accredited law school in California to keep that school open. In this instance, the same mischaracterizations, and mischaracterization is a polite word, that the directors and officers used with the students were used with the... Is it a fraud claim? If the students are alleging a fraud claim, why wouldn't that even fall outside of the insurance proceeds, which is the basis for the bar order, because wouldn't the fraud claim fall outside the insurance policy? While there may be an exclusion in the insurance policy, that exclusion does not inure to a defense. So until fraud was proven, those policies would have been continually wasted in defense costs. Over a half million dollars to date, actually over a million dollars to date if you count what's happened in this case, of insurance policy proceeds have been lost to defense costs. And I believe that that argument regarding fraud is frankly sophistry. The idea that a mischaracterization is automatically fraud and not negligence is just not factual. One can mischaracterize negligently or fraudulently. And further, the Zacharias court in the tense... Your point is there's two duties in insurance law, duty to defend and duty to indemnify. So if you have a fraud judgment, you wouldn't have to indemnify, but you still would have to defend. But why wouldn't you have a bar order against the directors and officers? They're the ones with the claim against potential assets of the receivership, because they have the claim against the insurance policy. And so you could just say, directors and officers, we're not going to pay your attorney's fees. Go through the claims process if you want us to pay those fees. Because in this instance, they were insured under the policies. They had a direct right to the policies. So we could no more get a bar order against them than, for example, in the Liberté case cited by counsel, where a bar order was procured against third party brokers. The reason Liberté came out on this way that it did was factual, not legal. It wasn't saying bar orders aren't appropriate. It wasn't saying bar orders aren't appropriate to third parties. It said bar orders are only appropriate to parties that have claims substantially similar to the receivership and parties that are holding assets to which the receivership has a claim. In this instance, the policy proceeds, the receivership definitely has a claim. In that instance, another Ponzi scheme, there were third party brokers who solicited customers to invest in the Ponzi scheme. Those third party brokers had their own insurance policies or their own assets and not even a tangential connection to the receiver. So that's what happened in Liberté. But if you look what happened in Wolliger, the facts in Wolliger had them narrow Liberté to that. So if you hear, if these students, and I refer to them as the Dunnegan intervenors because there are far more students other than this particular class that have claims in this receivership. If the Dunnegan intervenors had been solicited to go to these schools by some internet company that helps place kids in college and that internet company made those same mischaracterizations, lies, the receiver would have no claim there. And we would have no objection and no argument to prevent the students from going after those, for lack of a better word, brokers. In this instance, that's not the case. The claims, as Judge Polster found, are substantially similar. If you, again, looking to the Tenth Circuit in Zacharias, the arguments made in Zacharias were almost identical. And in that instance, the Tenth Circuit factually distinguished Liberté, Liberté II, found that they were going after substantially, the claims were substantially similar. The assets were assets that the receiver was entitled to go against. And like here, the initial statement of counsel that these students are being stripped of their day in court is simply not true. And the reason counsel is saying that is he's not reading the bar order in context with the settlement agreement. In this instance, the bar order specifically ensures that appellants can make claims against the receivership estate. That's in paragraph 8C.5. What do you say in response, is that like the litigation trust, what do you say in response to that requires a final judgment that they will not be able to get once the bar order is in place? The trust specifically says that they can pursue an ancillary action before the receivership court to have the claim established. They just don't like the court. There is a court available to them under paragraph 2.1C.4. Is that the Northern District of Ohio? Yes. That's Judge Polster. Judge Polster entered an order adopting the litigation trust, just like he entered an order adopting the bar order. You can't read one without the other. And if the Dunningans don't like, the first thing that's supposed to happen is they're supposed to meet and have a claims process and a potential distribution plan. And if they don't like that, they can go to court. In fact, these interveners are being treated better than any other creditor in the case, hoping to avoid, frankly, being here. There in the document is a set-aside for them with a formula showing how much money is to be set aside. And it's in 2.1C.4. And if they don't like it, they can challenge it. You have a class of creditors being treated, being given more rights than any other creditors and the health care claimants, but that's not enough. To call this not a race to judgment, a race to the courthouse, is ignoring the facts. Their argument, Judge, that somehow because there's an allegation of fraud that the insurance policies aren't in play, it's just not in Illinois. They weren't yelling there's no coverage. What they're unhappy with here is they're only being offered a pro-rata share of a diminishing asset. We have a minimum $8.5 million recovery for this receivership case. We have $40 million more in coverage waiting for the receivership case. We have $1.5 million more in coverage waiting for the receivership case. We have $1.5 million more in coverage waiting for the receivership case. But it seems quite an incredible power for Party A to contract with Party B to dissolve or eliminate Party C's rights. That's usually not how contracts work. Usually contracts are between the contracting parties, and you can't waive third party rights, which is effectively what this settlement agreement did. Agreed, Your Honor, and Judge Gibbons appropriately pointed out to have two receivership cases in the Sixth Circuit on the same day is interesting, but receivership courts routinely do this in state court, and in federal equity receiverships have routinely done it, although not as much since the bankruptcy code passed. The Gordon case I just looked at, it's based on securities laws. I mean, maybe this is a question for Congress. Well, the Gordon case, while it started as a securities fraud case, the bar order that was put in place to prevent the lawsuit was put in place to prevent lawsuits against the directors and officers of Initrac, a company. And while there was a securities component of it, and it certainly started as a securities fraud criminal case because people went to prison. So is that the best case you have? So what I'm looking for is either a treatise that predates the bankruptcy code that tells me as a matter of traditional historical federal equity practice, this type of contracting between A and B to strip Party C's rights is part of a receivership power. Gordon V. Dedante is instructive as the decision in the Tenth Circuit Zacharias. And the briefing in Zacharias is almost identical to the briefing here as far as what the receiver wanted to do, what the parties were asking for, and what happened. Zacharias also distinguished liberty  And there's not much. I mean, you've pointed to these two cases, but just by their nature, receiverships don't often produce a whole lot of appellate case law for us to look to. One, they're not very common anymore. And two, they sort of work out in a messy way in the district court without the need for appellate intervention. Would you think that is a fair characterization? Certainly because of the bankruptcy court. This case would have been in bankruptcy, but for the case Title IV prohibited a school from going into bankruptcy and continue to maintain funding. Or this case would be in bankruptcy. But Judge, I don't have the case on the top of my head. There is a case that is cited in our briefs. It points to the fact that these cases are rare. They are very factually intensive. And just like Zacharias looked at the law at Liberté, found that law to be consistent, but the facts of the case were different, so the borrower was appropriate. I said in the roving room before coming in here, next year I will have been a federal judge for 40 years. 19 of those were in the district court. I saw one receivership in those 19 years. I said we really don't see much of this. My time is up, but I have now been in private practice for 19 years. I have never had a year without a federal equity receivership. Do we see less because of the bankruptcy statutes now? Historically I think, and this isn't part of my argument, but historically I think of course we are seeing less because of bankruptcy. But the modern world has changed and what parties have found is that receiverships, whether they are in the district court or in the state court, are cheaper, faster, and easier than bankruptcy. So that is why there has been more of them. I have not been. Thank you, Your Honor. You have your rebuttal time. Mr. Wessler. Yes, Your Honor. Just a few brief points in rebuttal. Judge Murphy, I think you are right to be concerned about the use of a borrower outside of the defined statutory confines that exist for bankruptcy and securities receiverships. As far as I can tell, and we looked into the history of receiverships, the early equitable receiverships, when courts referred to the use of a borrower, this is not what they had in mind. What they used a borrower for was to allow everybody, all creditors, anybody who had a potential claim on the assets of an estate to come into court by a certain time or risk losing their right to claim later that they were entitled to some portion of the assets. It has morphed into what we now see, which is a process that has, if approved in this case, has virtually no safeguards designed to prevent the kind of stripping of non-consenting third parties of their valid claims. In the securities context and in the bankruptcy context, the reason non-consenting third party releases have been approved is because they've taken place under the watchful eye of both a bankruptcy trustee or in the securities context, the SEC. It has happened within the specified and detailed guidelines identified by Congress, but without those statutory guidelines and without the watchful eye of a government body, the risk is what you see here, which is a receiver pursuing claims that it does not hold in an effort to strip a third party of their right to seek relief for their own claims in a court that does not feel bound to carefully evaluate and assess all of the relevant factors. Just briefly, how would you respond? Does it satisfy you at all? Aside from the merits of the underlying power to do this, does it satisfy you at all that you've a claim in the litigation trust or in the Northern District of Ohio? I have two responses. The first is that is not at all what the trust agreement says. You all can go read it for yourselves. I'll give you the pin site. It's document 756-2 at page ID number 17721. It does not permit, it does not identify any court of competent jurisdiction that the students can go and pursue their claim. And even if it did, it would not satisfy us because it would only be one of the four factors that needs to be met in this case. The other three, I don't think we heard anything from the receiver that suggested that the district court here was able to carefully and adequately assess whether or not the claims were substantially identical, whether it had jurisdiction, or whether there was, in fact, global peace as a result of this settlement, which we now know the receiver has conceded in its briefing that there was not. And so in the absence of all of those factors, the entry of the borrower itself was ultra viris. I see my time has expired. Thank you. We thank you both very much for your time.